25CA1963 Hunter v Mountain View 08-06-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1963
City and County of Denver District Court No. 24CV31033
Honorable Jon J. Olafson, Judge

Angela Hunter,

Plaintiff-Appellee,

v.

Mountain View Pain Center, LLC,

Defendant-Appellant.

ORDER AFFIRMED

Division IV
Opinion by JUDGE LUM
Welling and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 6, 2026

Towards Justice, Alexander Hood, Victoria E. Guzman, Denver, Colorado, for
Plaintiff-Appellee

Semple, Farrington, Everall & Case, P.C., Jonathan P. Fero, M. Brent Case,
Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Mountain View Pain Center, LLC (Mountain View), brings this interlocutory appeal of the district court's order granting class certification.[1]  We affirm.

## I.     Background

¶ 2     Mountain View operates sixteen pain clinics in Colorado. Plaintiff, Angela Hunter, was a massage therapist employed at one of the clinic locations from March through October 2023.

¶ 3     In her class action complaint, Hunter alleged that Mountain View employed her at an hourly rate but paid her only for the time she actively provided massages to patients and not for other work performed (nonmassage time).  She alleged that this violated various state and city wage regulations.  Hunter moved for class certification and attached various offer letters, pay stubs, pay summaries, job advertisements, and other business records (employment documents) in support of her request to certify the

---

[1] A district court's order granting or denying class certification may be appealed to this court under C.A.R. 3.3 and C.R.C.P. 23(f).  A motions division of this court granted the motion to appeal in December 2025.  *Hunter v. Mountain View Pain Ctr., LLC*, (Colo. App. No. 25CA1963, Dec. 9, 2025) (unpublished order).

class.  The district court granted her motion.  Mountain View appeals.

## II.    Standard of Review and Applicable Law

¶ 4    We review a district court's decision to certify a class for an abuse of discretion.  *Jackson v. Unocal Corp.*, 262 P.3d 874, 879 (Colo. 2011); *BP Am. Prod. Co. v. Patterson*, 263 P.3d 103, 108 (Colo. 2011).  A district court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or if it misapplies the law.  *Jackson*, 262 P.3d at 880.

¶ 5    Class actions serve important functions in our civil justice system, including the promotion of judicial efficiency, consistency, and access to justice.  *See id.*; *Hicks v. Colo. Hamburger Co.*, 2022 COA 149, ¶ 17.  For this reason, we liberally construe C.R.C.P. 23 to support its policy favoring class actions.  *Farmers Ins. Exch. v. Benzing*, 206 P.3d 812, 817-18 (Colo. 2009); *Hicks*, ¶ 17; *LaBerenz v. Am. Fam. Mut. Ins. Co.*, 181 P.3d 328, 333 (Colo. App. 2007).

¶ 6    A party can maintain a class action if

> (1) [t]he class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of

2

the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

C.R.C.P. 23(a).

¶ 7    In addition to satisfying these requirements, the proposed class action must fit within one of the three subsections of C.R.C.P. 23(b).  As relevant here, subsection (b)(3) requires the moving party to demonstrate that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  C.R.C.P. 23(b)(3) (predominance requirement).

## III.    Discussion

### A.    Commonality

¶ 8    Mountain View contends that the district court erred by finding that Hunter had established commonality pursuant to C.R.C.P. 23(a)(2).[2]  We disagree.

¶ 9    Rule 23(a)(2) requires a party to show that "there are questions of law *or* fact common to the class."  C.R.C.P. 23(a)(2) (emphasis added).  "[F]actual differences in the claims of the individual [putative] class members should not result in a denial of class certification where common questions of law exist."  *In re Intelcom Grp., Inc. Sec. Litig.*, 169 F.R.D. 142, 148 (D. Colo. 1996).[3]  A single common question will suffice to satisfy Rule 23(a)(2), but the question must be one "that is central to the validity of each one of

---

[2] As an initial matter, we reject Mountain View's claim that the district court failed to consider or examine its arguments and evidence against class certification.  We're satisfied that the district court identified Mountain View's arguments, assigned weight to its supporting evidence, and compared them to Hunter's arguments and evidence.  And we "presume that the [district] court considered the evidence before it."  *In re Marriage of Hatton*, 160 P.3d 326, 329 (Colo. App. 2007).

[3] "C.R.C.P. 23 is virtually identical to Fed. R. Civ. P. 23, and therefore, in interpreting the Colorado rule we rely on cases applying the federal rule."  *Goebel v. Colo. Dep't of Insts.*, 764 P.2d 785, 794 n.12 (Colo. 1988).

the claims." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

¶ 10     Essentially, Hunter alleged that Mountain View agreed to pay its employees hourly and then failed to pay them for all hours worked. In support of her motion, Hunter provided various documents that generally list an "hourly" rate for putative class members' wages. *See infra* Part III.D. And she provided Mountain View's C.R.C.P. 30(b)(6) deposition and discovery responses, in which it stated that all massage therapists were compensated according to the same policies and procedures (although it asserted that the therapists were all paid on a "piece-rate" basis — i.e., per massage). In light of this evidence, the district court didn't abuse its discretion by finding commonality because whether the employees were paid hourly and whether Mountain View failed to fulfill its payment obligations are factual questions common to all class members.

¶ 11     Nevertheless, Mountain View argues that the district court erred by finding "no evidence that the putative class was subject to different pay and work policies and procedures," because the employment documents suggest that some employees may have

agreed to a different arrangement. But we perceive no error. Regardless of what some employment documentation may suggest the employees' pay structures were *supposed to be*, the evidence before the district court (specifically, Mountain View's deposition and discovery responses) supported a conclusion that Mountain View treated all employees the same way — i.e., that it subjected them to the same "pay and work policies and procedures."

¶ 12    We further address Mountain View's arguments regarding discrepancies in the employment documentation *infra* Part III.D. *See Brooks v. Educators Mut. Life Ins. Co.*, 206 F.R.D. 96, 101-02 (E.D. Pa. 2002) (individualized issues are a factor in determining commonality but are more appropriately addressed under Rule 23(b)(3) predominance), *cited with approval in LaBerenz*, 181 P.3d at 338.

## B.    Typicality

¶ 13    Mountain View also argues that the district court erred by finding typicality, alleging again that the employment documents contain varying fact patterns which contradict Hunter's claims and make them atypical of the putative class.

¶ 14    We acknowledge that the employment documents indicate there may be some factual variations among the putative class members.  But typicality "is usually met '[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented[,] . . . irrespective of varying fact patterns which underlie individual claims.'"  *Ammons v. Am. Fam. Mut. Ins. Co.*, 897 P.2d 860, 863 (Colo. App. 1995) (quoting 1 Herbert B. Newberg, *Newberg on Class Actions* § 3-13, at 3-77 (3d ed. 1992); *see also Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988) ("[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory.").

¶ 15    Again, Hunter alleged that Mountain View failed to pay her appropriate hourly rate for all hours worked.  And she alleged that this same unlawful conduct was directed at the other class members.  This satisfies typicality.  *See Ammons*, 897 P.2d at 863. We will address Mountain View's contention that some individual massage therapists may have been permitted to perform other work

during nonmassage time when we address predominance *infra* Part III.D.  *See Brooks*, 206 F.R.D. at 101-02.

## C.    Adequacy

¶ 16    Next, Mountain View contends that the district court erred by concluding that Hunter met the adequacy requirement, arguing again there is evidence that some putative class members were differently situated because they agreed to piece-rate pay or had the opportunity to perform other paid hourly work during nonmassage time.  Hunter, it alleges, must "sacrifice" these class members because she claims she was an hourly employee and didn't have the option to perform other work during nonmassage time.

¶ 17    To satisfy adequacy, "[a] class representative cannot have interests antagonistic to the class."  *Steiner v. Ideal Basic Indus., Inc.*, 127 F.R.D. 192, 194 (D. Colo. 1987).  And the purpose of the adequacy requirement is to ensure that the named plaintiff "will vigorously prosecute the interests of the class through qualified counsel."  *Neiberger v. Hawkins*, 208 F.R.D. 301, 316 (D. Colo. 2002).

¶ 18    Even if, as Mountain View alleges, a few class members were subject to a different pay policy or were able to be paid for

8

nonmassage time, Mountain View doesn't explain, and we can't discern, how Hunter's interests are "adverse" to these differently situated class members or how their interests would be harmed if Hunter prevailed. Accordingly, we perceive no abuse of discretion in the district court's determination that Hunter would adequately represent the interests of the other class members.

### D. Predominance

¶ 19 Mountain View also contends that the district court abused its discretion by concluding that common issues predominate over individual ones, arguing that individual inquiries must be made into each massage therapist's contracted pay rate and whether each massage therapist was able to work during nonmassage time. We disagree.

> Whether common questions predominate over individual ones turns on "whether the proof at trial will be predominantly common to the class or primarily individualized." This is "a fact-driven, pragmatic inquiry guided by the objective of judicial efficiency and the need to provide a forum for the vindication of dispersed losses." A plaintiff demonstrates predominance when [they] "advance[] a theory by which to prove or disprove 'an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position.'"

9

> While a court may need to consider the parties' substantive claims and defenses as part of its predominance analysis, it must not prejudge the merits of the case or certify only those claims likely to prevail on the merits.

*Hicks*, ¶¶ 20-21 (citations omitted).

¶ 20    As it pertains to Hunter's theory that Mountain View violated various wage laws by not paying class members for all hours worked, Mountain View argues that the rate and basis of pay for every class member will be at issue because (1) the employment documents demonstrate different pay structures, requiring individualized inquiry into what basis of pay each employee agreed to; and (2) there is some evidence that some employees were able to perform other paid office work during nonmassage time.

¶ 21    This presents two questions.  First, what pay structure did Mountain View use for its employees?  And second, if the pay structure was hourly, to what extent was each employee not paid what they were owed for hours worked?  We address each question in turn.

¶ 22    First, common questions predominate when considering what pay structure Mountain View employed.  Mountain View represented that it paid its massage therapists according to the

same policies. And the majority of the employment documents reflect substantially similar language. Some of the documents indicate that employees were paid an "hourly" wage through check boxes indicating the employee's "salary type." Others contain job descriptions, pay increase requests, and similar notes indicating that the employees were paid "per hour." We acknowledge that a few employment documents include slightly different language that could arguably be read to describe a different pay structure, but these don't represent the majority of the employment documents presented.[4] *Cf. In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 119 (2d Cir. 2013) (finding predominance satisfied where relevant contracts were "substantially similar in all material respects"); *Hanks v. Lincoln Life & Annuity Co. of N.Y.*, 330 F.R.D. 374, 382-83 (S.D.N.Y. 2019) (finding predominance satisfied where key contract terms were "not materially different across [multiple] policies").

---

[4] We also note that, to the extent evidence later indicates a greater dissimilarity in pay structures than is indicated by the documents presented to the district court, the court can decertify the class. *Jackson v. Unocal Corp.*, 262 P.3d 874, 887 (Colo. 2011) ("C.R.C.P. 23 affords trial courts broad discretion and flexibility to certify and subsequently decertify a class action . . . .").

¶ 23     Second, if the employees were indeed hourly workers, the extent to which they were paid what they were owed for hours worked is a damages question.  This will likely involve some individualized inquiry because there is some evidence that class members were paid for other work during nonmassage time.  And regardless of whether some class members were able to work during nonmassage time, the number of unpaid hours would need to be individually calculated for each employee.  But the need for individual proof of damages doesn't preclude a finding of predominance.  *Jackson*, 262 P.3d at 889.

¶ 24     For these reasons, the district court didn't abuse its discretion in finding predominance.  *See E-470 Pub. Highway Auth. v. Revenig*, 140 P.3d 227, 230-31 (Colo. App. 2006) (under the abuse of discretion standard, a reviewing court doesn't ask whether it would have ruled as the district court did but instead considers "whether the trial court's decision fell within a range of reasonable options").

### E.     Superiority

¶ 25     The district court concluded that a class action is the superior vehicle to resolve this dispute because the claims for recovery are based on common theories of liability, common questions

predominate, and it wouldn't be cost-effective for employees to retain counsel on an individual basis. *See Jackson*, 262 P.3d at 880.

¶ 26 Most of Mountain View's arguments that the district court abused its discretion in so concluding pertain to the commonality and predominance questions, which we have already addressed. Mountain View also says that Hunter's assertion that the class members are economically underprivileged is "speculative." However, Hunter's pay summaries indicated that she netted just over $21,000 in the seven months she worked at Mountain View. And the employment documentation indicates that, while employees earned between $20 and $30 per hour (with most clustered between $22 and $25 per hour),[5] many employees were scheduled for fewer than forty hours per week (in at least one case, as few as eight hours), and a number of the employees worked for Mountain View for less than one year. Given this record, and notwithstanding the availability of statutory attorney fees, we perceive no abuse of

---

[5] We do not express any opinion about the employees' pay structure. We note what the documents appear to reflect only to explain why the district court didn't abuse its discretion regarding the issue of superiority.

discretion in the district court's conclusion that a class action is more cost-effective than requiring employees to bring individual employment actions. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (class actions allow parties to "aggregat[e] . . . relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor" (citation omitted)).

## IV. Class Definition

¶ 27 Finally, in her answer brief, Hunter asks this court to modify the class definition to conform with *By the Rockies, LLC v. Perez*, 2025 CO 56. Because the district court has not yet ruled on Hunter's motion to modify the class, we decline to address Hunter's request.

¶ 28 On September 15, 2025, the Colorado Supreme Court published its opinion in *Perez*, in which it considered "which statute of limitations applies to claims asserted under the Minimum Wage Act, § 8-6-118, C.R.S. [2025]." 2025 CO 56, ¶ 1. It concluded "that the two- to three-year statute of limitations period in the Wage Claim Act[, § 8-4-122, C.R.S. 2025,] governs such claims" instead of the six-year limitations period in section 13-80-103.5(1)(a), C.R.S. 2025. *Id.* at ¶¶ 1-2. Section 8-4-122 prescribes a two-year statute

14

of limitations for all wage claim actions except for actions brought for willful violation of the Wage Claim Act.

¶ 29     Eleven days later, the district court in this case issued its order granting Hunter's motion to certify the class. The class definition included massage therapists who were employed by Mountain View in Colorado from six years prior to the filing of the lawsuit. After Mountain View filed its notice of appeal, Hunter filed a motion requesting that the district court modify the class definition to be consistent with the holding in *Perez*. After this court agreed to accept Mountain View's appeal, all lower court proceedings were stayed, and the district court didn't rule on Hunter's motion.

¶ 30     Hunter asks us to correct the district court's "technical abuse of discretion" by modifying the definition from six years before filing the complaint to three years. She argues that the three-year limitations period applies because she alleged Mountain View's violations of the Wage Claim Act and the Minimum Wage Act were willful. But arguments not ruled on by the district court cannot be raised for the first time on appeal. *Sterenbuch v. Goss*, 266 P.3d 428, 435 (Colo. App. 2011). Because Hunter's motion is still

pending before the district court, we decline to modify the class definition.

## V.    Disposition

¶ 31    We affirm the district court's order.

JUDGE WELLING and JUDGE SCHOCK concur.